Jill MORETTI et al.

v.

Lynn C. LOWE, M.D., et al.

No. 89–503–M.P.

Supreme Court of Rhode Island.

June 10, 1991.

E. Paul Grimm, Decof & Grimm, Providence, Donna Savella, Cranston, for plaintiff.

Frank S. Lombardi, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, J. Olenn, Olenn & Penza, Warwick, David Caroll, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on a petition for the issuance of a writ of certiorari in which the plaintiffs seek our review of a denial by the trial court of their motion to compel more responsive answers by defendant Lowe to interrogatories propounded to him in a wrongful-death medical-malpractice action. The petition is granted.

The plaintiffs David and Jill Moretti (Moretti), individually and as survivors and heirs at law of Chelsea Ann Moretti (Chelsea), brought suit against Lynn C. Lowe, M.D. (Lowe), and Kathleen Z. Hawk (Hawk), a certified nurse midwife.

In count 1 of the complaint Moretti alleges negligence on the part of Lowe in the diagnosis and treatment of Moretti and her unborn child, Chelsea, resulting in the latter's death on May 21, 1986. Count 2 alleges negligence on the part of Hawk in the treatment and care of Moretti and her unborn child, Chelsea. No allegations are raised against the hospital where the birth occurred for its supervision or evaluation of Lowe.

Moretti's counsel propounded thirteen interrogatories to Lowe. Two of those interrogatories gave rise to the issues before us.

Interrogatory 8 asked:

"State the names and addresses of all persons believed or known by you or your agents, servants, or insurers to have any knowledge concerning any facts pertaining to the claim set forth in this action."

Lowe answered interrogatory 8 as follows:

"Other than the parties to this action, members of committees who are covered

by legal privilege, experts, and the plaintiffs' treating physicians, none are known."

Interrogatory 10 asked:

"Have you ever had any staff or other privileges restricted, revoked, or curtailed at any hospital? If so, state in what way the restriction, revocation, or curtailment was invoked, the dates of same, together with the reason."

Lowe answered interrogatory 10 as follows:

"Objection to answering for any period of time subsequent to May 21, 1986. As of May 21, 1986 and prior to that date, I had never had my privileges restricted, revoked, or curtailed."

The plaintiffs moved to compel defendant Lowe to file more responsive answers. An order was agreed upon by the parties regarding all interrogatories propounded except those numbered 8 and 10. After a hearing, the motion-calendar justice denied the motion for more responsive answers regarding Nos. 8 and 10.

It was the motion-calendar justice's opinion that any further response would violate the statutory privilege set out in G.L.1956 (1989 Reenactment) § 23–17–25.[1] That statute provides the privileges and immunities for peer-review activities. He stated:

"[T]he chilling effect [of granting the motion] would be to deny the hospitals the services of competent physicians to review the decisions being made by members who have staff privileges, and the impact of such a decision would be self-defeating in that it would prevent the medical community from upgrading the care and treatment of members of the general public, and I think it would be a very, very poor policy to put them in a position where they can be subpoenaed in every medical malpractice case that they

1. General Laws 1956 (1989 Reenactment) § 23–17–25 states in relevant part:
    "(a) Neither the proceedings nor the records of peer review boards as defined in § 5–37–1 shall be subject to discovery or be admissible in evidence in any case save litigation arising out of the imposition of sanctions upon a physician. * * * Nothing contained herein shall apply to records made in the

regular course of business by a hospital or other provider of health care information. Documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any civil proceedings merely because they were presented during the proceedings of the committee."

may have been called upon to cast an opinion."

In *Cofone v. Westerly Hospital*, 504 A.2d 998, 1000 (R.I.1986), we held that "the statute [§ 23–17–25] explicitly dictates that only the records and the proceedings which originate with[in] the peer-review board are immune from discovery and inadmissible."

The plaintiffs argue that the information sought in the matter before us does not take the form of the records and the proceedings of the peer-review board and is therefore discoverable. They argued to the motion-calendar justice that they were seeking only supplemental information, such as whether defendant had been disciplined after the alleged negligent act.

For support of their position plaintiffs rely on *Humana Hospital v. Superior Court*, 154 Ariz. 396, 742 P.2d 1382 (1987). In that case the Arizona court said that "[w]hile the internal workings and deliberative processes of regularly constituted committees are immune from discovery, the *effect* of the proceedings is not * * * ." *Id.* at 403, 742 P.2d at 1389. Other courts have also adopted this position. In *Anderson v. Breda*, 103 Wash. 2d 901, 907, 700 P.2d 737, 741 (1985), the Supreme Court of Washington found:

> "Although the extent of a physician's hospital privileges may be determined by what occurs within a quality review committee, the fact that a physician's privileges are restricted, suspended or revoked is not properly subject to the protections of the statute. The goal and fundamental purpose of the statute is open discussions during committee investigations. Open discussion is not inhibited by permitting discovery of the effect of the committee proceedings."

That court observed that the final decision to rescind, revoke, or suspend a physician's hospital privileges might be made by a hospital administrator or by an entity other than the peer-review committee. The court concluded that the privilege from discovery afforded to a hospital peer-review committee did not include discovery from a defendant physician concerning the termination, suspension, or restriction of that physi-

cian's hospital privileges. *Id.* at 908, 700 P.2d at 742. A similar conclusion was reached in *Greenwood v. Wierdsma*, 741 P.2d 1079, 1089 (Wyo.1987), wherein the court held that the peer-review privilege does not prohibit discovery of actions that may be taken thereafter by the hospital as may be influenced by the medical-staff committee's decision.

In another case that addressed this issue it was decided that the peer-review privilege did not extend to the imposition of restrictions. *Willing v. St. Joseph Hospital*, 176 Ill.App.3d 737, 126 Ill.Dec. 197, 531 N.E.2d 824, (1988). The court reasoned that nearly every action of a physician or a hospital could, in some sense, arguably be connected to something that was said, done, or recorded at a peer-review session. The peer-review statute was intended to protect the peer-review process itself but not disclosure of the imposition of restrictions that may result from the process.

▆▆▆ In determining the scope of our own peer-review statute, we keep in mind that privileges, in general, are not favored in the law and therefore should be strictly construed. *Jordan v. Court of Appeals For the Fourth Supreme Judicial District*, 701 S.W.2d 644, 647 (Tex.1985). Furthermore, because this immunity from discovery is in derogation of both common-law and the general policy favoring discovery, immunity is to be strictly construed and limited to its intended purpose. *Anderson v. Breda*, 103 Wash. 2d 901, 700 P.2d 737 (1985); *Coburn v. Seda*, 101 Wash. 2d 270, 677 P.2d 173 (1984). The burden of establishing entitlement to nondisclosure rests on the party resisting discovery.

In enacting our peer-review statute, the Legislature recognized the need for open discussions and candid self-analysis in peer-review meetings to ensure that medical care of high quality will be available to the public. That public purpose is not served, however, if the privilege created in the peer-review statute is applied beyond what was intended and what is necessary to accomplish the public purpose. The privilege must not be permitted to become a shield behind which a physician's incompetence,

impairment, or institutional malfeasance resulting in medical malpractice can be hidden from parties who have suffered because of such incompetence, impairment, or malfeasance.

 Relying upon this rationale, we find that the conclusions arrived at in our sister states represent a reasonable solution to the problem we now face. A statute providing privileges and immunities for peer-review activities must not be used as a shield to obstruct proper discovery of relevant information generated outside peer-review committee meetings. Thus, we find that § 23–17–25 does not render immune information otherwise available from original sources even if the information was presented at a peer-review committee meeting. Further, we are persuaded that a hospital should, on proper interrogatory, identify all persons who have knowledge of the underlying event that is the basis of the malpractice action regardless of whether these persons sit on a peer-review committee or have presented evidence to a peer-review committee. *Coburn,* 101 Wash. 2d at 277, 677 P.2d at 177.

We also find that the fact that privileges have been lost or restricted is highly relevant and material evidence in a medical-malpractice action that is not privileged under § 23–17–25. Making the fact of loss or restriction of privileges unavailable to the injured party is not necessary to accomplish the purposes of the peer-review statute and therefore should not be privileged.

Applying these conclusions to the case before us we find that plaintiffs are entitled to relief. The defendant must respond more fully to interrogatories 8 and 10. The defendant himself has no right to invoke the privilege granted by § 23–17–25 to avoid giving relevant information. The privilege, as we have said, applies to the records and proceedings of peer-review committees; not to the identity of persons who might serve on such committees or who have given information to such committees. The privilege is available to be invoked only by persons who are asked to disclose what is privileged; that is the records and the proceedings which originate within the peer-review board.

For these reasons, the petition for writ of certiorari is granted, the orders entered below regarding interrogatories 8 and 10 are quashed, and the papers of the case are remanded to the Superior Court for further proceedings consistent with this opinion.

FAY, C.J., and WEISBERGER, J., did not participate.