DTH PUBLISHING CORPORATION, d/b/a *THE DAILY TAR HEEL*, Plaintiff v. THE UNIVERSITY OF NORTH CAROLINA at CHAPEL HILL and the UNC-CH UNDER-GRADUATE COURT, Defendants

No. COA97-305

(Filed 17 February 1998)

**1. State § 10 (NCI4th)— UNC-CH Undergraduate Court— "public body"**

The trial court did not err in its determination that the UNC-CH Undergraduate Court is a "public body" under N.C.G.S. § 143-318.10. The Undergraduate Court members are clearly appointed and confirmed by those who are authorized to do so under the laws of this State and pursuant to the policies and regulations of UNC-CH and UNC; additionally, the stipulated facts demonstrate that the Undergraduate Court qualifies as a "public body" pursuant to the remaining requirements of N.C.G.S. § 143-318.10.

**2. State § 10 (NCI4th)— UNC-CH Undergraduate Court— closed session—Federal Education and Privacy Right Act**

The trial court did not err by ruling that defendant UNC-CH Undergraduate Court, as a public body, was authorized to close its proceedings pursuant to N.C.G.S. § 143-318.11(a)(1) and 20 U.S.C. §1232g, the Family Educational and Privacy Rights Act (FEPRA). FEPRA clearly expresses the federal policy that student education records should not be widely disseminated to the public and makes student education records "privileged or confidential" for N.C.G.S. § 143-318.11(a)(1) purposes.

**3. Records of Instruments, Documents, or Things § 1 (NCI4th)— UNC-CH Undergraduate Court—closed session—minutes withheld—Public Records Act**

The records of a closed session of the UNC-CH Undergraduate Court may be withheld from public inspection pursuant to N.C.G.S. § 143-318.10(e) where a closed session of the Undergraduate Court was authorized under N.C.G.S. § 143-318.11. Although the Public Records Act provides that minutes of official meetings of a public body are public records under N.C.G.S. § 132-1 et seq., N.C.G.S. § 143-318.10(e) provides that minutes may be withheld so long as public inspection would frustrate the purpose of a closed session.

**4. Constitutional Law § 128 (NCI4th)— UNC-CH Undergraduate Court—closed session—no closed court violation—not a court**

The closure of defendant UNC-CH's Undergraduate Court proceedings did not violate the open courts provision in Article I, § 18 of the North Carolina Constitution. The Undergraduate Court is not a "court" under the open courts provision; it not only cannot, but, in fact, does not, wield the judicial power of the State in its regulation of student conduct. Its powers are not derivative of our judiciary system nor are they limited by the safeguards protecting a citizen in the court system.

**5. Constitutional Law § 128 (NCI4th)— UNC-CH Undergraduate Court—closed session—no open courts violation**

Even if the UNC-CH Undergraduate Court were properly categorized as a court, the open courts provision of the North Carolina Constitution does not require that its proceedings be open to the public because that provision has its roots in the historic practice of open criminal and civil trials and there is no record evidence that UNC student disciplinary proceedings have been historically open to the public. As with the pre-1973 civil commitment process described in *In re Belk*, 107 N.C. App. 448, the proceedings of the Undergraduate Court are not governed by the same procedures as the formal judicial hearings conducted by courts of the General Court of Justice.

**6. Constitutional Law § 128 (NCI4th)— UNC-Chapel Hill Undergraduate Court—closed session—First Amendment—no violation**

The First Amendment to the United States Constitution does not give the public a presumptive right of access to UNC-CH Undergraduate Court proceedings. The United States Supreme Court has not yet decided whether the public's presumptive right to attend certain criminal proceedings extends to civil proceedings, the record evidence does not show that UNC-CH disciplinary proceedings have been historically open to the press and general public, and, on the record presented, public access would not play a significant positive role in the functioning of these proceedings.

Appeal by defendants and by plaintiff from judgment entered 12 December 1996 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 23 October 1997.

DTH PUBLISHING CORP. v. UNC-CHAPEL HILL

[128 N.C. App. 534 (1998)]

*Everett, Gaskins, Hancock & Stevens, by Hugh Stevens and C. Amanda Martin, for plaintiff.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas J. Ziko, for defendants.*

McGEE, Judge.

This appeal raises the issue of whether a University of North Carolina at Chapel Hill (UNC-CH) Undergraduate Court may hold student disciplinary proceedings in closed session. The parties have stipulated to the facts which are summarized as follows. On or about 13 February 1996, approximately 1500 copies of the *Carolina Review*, a UNC-CH student magazine, were removed from the racks used for distribution of the magazine. On 16 April 1996, the Undergraduate Court commenced disciplinary proceedings against two students regarding this incident. The editor of *The Daily Tar Heel*, a daily newspaper which serves the UNC-CH community, attempted to attend the Undergraduate Court proceedings but was informed by a UNC-CH Judicial Programs Officer that Undergraduate Court hearings were required to be closed. On 17 April 1996 DTH Publishing Corporation (DTH), d/b/a *The Daily Tar Heel*, obtained an ex parte temporary restraining order in Orange County Superior Court from Judge Jack A. Thompson, and a hearing was set to determine whether the restraining order should remain in effect. Following the 18 April 1996 hearing, Judge Thompson, in an order entered 19 April 1996, refused to continue the temporary restraining order.

On 18 April 1996, DTH filed this action seeking injunctive relief and alleging, *inter alia*, that: (1) defendants violated N.C. Gen. Stat. § 143-318.9 *et. seq.* (the Open Meetings Law) by refusing to permit public access to Undergraduate Court proceedings; (2) recordings of the Undergraduate Court proceedings were public records under N.C. Gen. Stat. § 132-1 and must be available for public inspection and copying; (3) defendants violated Article I, § 18 of the North Carolina Constitution (open courts provision) by closing the Undergraduate Court proceedings to the public; and (4) UNC-CH's refusal to permit plaintiff access to the Undergraduate Court proceedings violated the First Amendment of the United States Constitution. Defendants admitted they had denied plaintiff access to the Undergraduate Court proceedings but denied that plaintiff was entitled to the relief sought. The matter was heard without a jury upon stipulated facts at the 2 December 1996 Civil Session of Orange

County Superior Court, Judge F. Gordon Battle presiding. On 12 December 1996, the trial court entered judgment in which it adopted the stipulated facts and denied plaintiff the relief sought, ruling that: (1) the Undergraduate Court is a public body subject to the Open Meetings Law; (2) the Undergraduate Court has the right under N.C. Gen. Stat. § 143-318.11(a)(1) and 20 U.S.C. § 1232g to conduct hearings in closed session; (3) plaintiff has no right to inspect or copy recordings of closed sessions of the Undergraduate Court; (4) the Undergraduate Court is not a court subject to the open courts provision of the state constitution; and (5) plaintiff is not entitled to relief under the First Amendment. Both defendants and plaintiff appeal.

## Defendants' Appeal

[1] Defendants argue that the trial court erred by ruling that the Undergraduate Court is a "public body" subject to the Open Meetings Law. We disagree. The Open Meetings Law provides in pertinent part:

(a) Except as provided in G.S. 143-318.11, G.S. 143-318.14A, G.S. 143-318.15, and G.S. 143-318.18, each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting.

(b) As used in this Article, "public body" means any elected or appointed authority, board, commission, committee, council, or other body of the State, or of one or more counties, cities, school administrative units, constituent institutions of The University of North Carolina, or other political subdivisions or public corporations in the State that (i) is composed of two or more members and (ii) exercises or is authorized to exercise a legislative, policy-making, quasi-judicial, administrative, or advisory function.

N.C. Gen. Stat. § 143-318.10 (1996). Defendants contend the Undergraduate Court is not an "elected or appointed authority, board, commission, committee, council, or other body . . . of one or more . . . constituent institutions of the University of North Carolina" because the Undergraduate Court members are not directly appointed by the UNC-CH Board of Trustees. We hold that defendants' narrow construction of "public body" is unsupported by the statutory language.

The parties have stipulated to the organization of the Undergraduate Court as follows. The members of the Undergraduate Court are appointed by the Student Body President and confirmed by the Student Congress in accordance with policies adopted by the

UNC-CH Chancellor pursuant to the authority delegated to the Chancellor by the UNC Board of Governors. The Chancellor has charged and authorized "the student courts, including the Undergraduate Court . . . with adjudication of allegations of violation of the Instrument of Student Judicial Governance, which incorporates the Code of Student Conduct." The student court members are certified as qualified to serve by the Undergraduate Court Chair and the Vice Chancellor for Student Affairs. All sanctions resulting from the Undergraduate Court's verdict are administered by the Vice Chancellor for Student Affairs whose authority on this matter has been delegated to the Judicial Programs Officer. A student who is found guilty may appeal to the University Hearings Board and may appeal further to the Chancellor if the student claims a violation of basic rights. An appeal from the Chancellor's decision can be taken to the UNC-CH Board of Trustees.

In 1994, the General Assembly amended the N.C.G.S. § 143-318.10 definition of "public body" adding the phrase "elected or appointed" and deleting previous requirements that the public body be established in certain enumerated ways. *See* 1994 N.C. Sess. Laws ch. 570, § 1; *see also* David M. Lawrence, *1994 Changes to the Open Meetings Law*, Local Government Law Bulletin, September 1994, at 1. The current N.C.G.S. § 143-318.10 does not delineate who or what entity must do the appointing for a body to qualify as "appointed." Black's Law Dictionary defines the terms "appoint" and "appointment" as follows, in pertinent part:

**Appoint.** To designate, choose, select, assign, ordain, prescribe, constitute, or nominate. To allot or set apart. To assign authority to a particular use, task, position, or office.

Term is used where exclusive power and authority is given to one person, officer, or body to name persons to hold certain offices.

**Appointment.** The designation of a person, by the person or persons having authority therefor, to discharge the duties of some office or trust.

. . .

*Office or public function.* The selection or designation of a person, by the person or persons having authority therefor, to fill an office or public function and discharge the duties of the same. The term "appointment" is to be distinguished from "election."

Black's Law Dictionary 99 (6th ed. 1990). One of the distinguishing characteristics of these definitions is that the person or body doing the appointing must be one *authorized* to do so. Here, the parties' stipulations demonstrate that the Student Body President and the Student Congress derive their authority to appoint and confirm Undergraduate Court members from the Chancellor, who in turn derives his authority on this matter from the UNC-CH Board of Trustees. The Chancellor and the UNC-CH Board of Trustees derive their authority from the Board of Governors of the University of North Carolina (UNC) which, in turn, derives its authority from N.C. Gen. Stat. § 116-11(2) (1994) and Article IX, Section 8 of our North Carolina Constitution. Thus, the Undergraduate Court members are clearly appointed and confirmed by those who are authorized to do so under the laws of this State and pursuant to the policies and regulations of UNC-CH and UNC.

In addition, the stipulated facts demonstrate that the Undergraduate Court qualifies as a "public body" pursuant to the remaining N.C.G.S. § 143-318.10 requirements. Since the Undergraduate Court has a chairperson, vice chairs, at least thirty members, and hears evidence in the presence of four members led by the chair or a vice-chair, it clearly "is composed of two or more members" as required by N.C.G.S. § 143-318.10. The stipulated facts also demonstrate that the Undergraduate Court is authorized to exercise an administrative or advisory function pursuant to N.C.G.S. § 143-318.10 when it holds hearings, issues subpoenas, renders verdicts, and recommends sanctions pursuant to the power granted to it by the University. In sum, we hold that the UNC-CH Undergraduate Court is a "public body" under N.C.G.S. § 143-318.10 as the trial court correctly determined.

## Plaintiff's Appeal

[2] Plaintiff argues that the trial court erred by ruling that the Undergraduate Court, as a public body, was authorized pursuant to N.C. Gen. Stat. § 143-318.11(a)(1) and 20 U.S.C. § 1232g to close its proceedings. N.C.G.S. § 143-318.11(a)(1) as amended in 1994 provides:

(a) Permitted Purposes.—It is the policy of this State that closed sessions shall be held only when required to permit a public body to act in the public interest as permitted in this section. A public body may hold a closed session and exclude the public only when a closed session is required:

(1) To prevent the disclosure of information that is *privileged or confidential pursuant to the law of this State or of the United States*, or not considered a public record within the meaning of Chapter 132 of the General Statutes.

(Emphasis added).

Plaintiff contends the trial court erred by concluding that the Family Educational and Privacy Rights Act (FERPA), codified at 20 U.S.C. § 1232g, renders the student information divulged in Undergraduate Court proceedings "privileged or confidential" under N.C.G.S. § 143-318.11(a)(1). We disagree. FERPA withholds federal funds from any educational agency or institution which has a policy or practice of releasing educational records, or personally identifiable information contained in educational records, to anyone other than certain enumerated persons and entities without the consent of the student's parents or the student, if the student is eighteen years or older, or is attending a postsecondary educational institution. *See* 20 U.S.C. § 1232g(b), (d)(1997).

Although FERPA does not *require* UNC to do anything, but instead operates by withholding funds, we hold FERPA does make student education records "privileged or confidential" for N.C.G.S. § 143-318.11(a)(1) purposes. *See Student Bar Association v. Byrd*, 293 N.C. 594, 598-99, 239 S.E.2d 415, 419 (1977). Based on its review of FERPA legislative history, a federal district court has observed, "FERPA was adopted to address systematic . . . violations of students' privacy and confidentiality rights through unauthorized releases of sensitive educational records." *Smith v. Duquesne University*, 612 F. Supp. 72, 80 (1985), *aff'd*, 787 F.2d 583 (1986); *see also Bauer v. Kincaid*, 759 F. Supp. 575, 590-91 (1991). FERPA does not specifically employ the terms "privileged" and "confidential" but it clearly expresses the federal policy that student education records should not be widely disseminated to the public and, except in certain enumerated circumstances, should not be released without proper consent. *See* 20 U.S.C. § 1232g(b), (d) (1997).

Plaintiff argues, however, that the United States Supreme Court's recent denial of certiorari in an Ohio Supreme Court case, *State ex Rel. The Miami Student v. Miami University*, 680 N.E.2d 956 (1997), *cert. denied*, 66 U.S.L.W. 3298 (U.S. Ohio, Dec. 08, 1997) (No. 97-606), should influence our opinion in the case before us. A review of numerous United States Supreme Court opinions shows that a denial of writ of certiorari by the Supreme Court "imports no expression

upon the merits of the case." *United States v. Carver*, 260 U.S. 482, 490, 67 L. Ed. 361, 364 (1923). The Supreme Court's review on a writ of certiorari is subject to the Court's judicial discretion and does "not establish the law of the case." *Hughes Tool Co. v. Trans World Airlines*, 409 U.S. 363, 364, 34 L. Ed. 2d 577, 581 n.1 (1973). Moreover, the facts in this matter are distinguishable from the Ohio case. The Ohio Supreme Court held that records of student disciplinary proceedings with the names of the students deleted were not protected by FERPA. *Miami University*, 680 N.E.2d at 172. The school was required to reveal only "the general location of the incident, the age and sex of the student . . . the nature of the offense, and the type of disciplinary penalty imposed." *Id.* at 959. The Court also permitted Miami University to omit the "exact date and time of the alleged incident . . . since this constitutes other information that may lead to the identity of the student." *Id.* While the Ohio Supreme Court ordered the release of essentially statistical information regarding disciplinary proceedings, it did so only to the extent that it did not risk jeopardizing the privacy of an individual student by requiring the disclosure of the results from one specific disciplinary hearing. We therefore do not follow the Ohio Supreme Court's opinion in this case as it is undisputed that the identity of the student would not be protected if the meeting was open.

FERPA defines "education records" as "those records, files, documents, and other materials which—(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A); *see also* 34 C.F.R. § 99.3 (setting forth United States Department of Education definition of "education records" under FERPA). The statute also lists certain materials which are not considered "education records." *See* 20 U.S.C. § 1232g(a)(4)(B). However, there is no express exception for information divulged in student disciplinary proceedings.

Here, the parties' stipulations show that "[i]t is impossible to hold a student disciplinary hearing without divulging student records as defined under FERPA or personally identifiable information contained therein." Other stipulations also show that the records so divulged contain information directly related to students and are maintained by UNC-CH or by persons acting for UNC-CH. Given the breadth of FERPA's definition of "education records" and based on the stipulated facts, the student records at issue in this appeal are protected as "education records" under FERPA and are "privileged or

confidential pursuant to the law . . . of the United States" under N.C.G.S. § 143-318.11(a)(1). Thus, the trial court correctly ruled that the Undergraduate Court was entitled to hold a closed session to prevent the disclosure of education records protected by FERPA.

[3] Our resolution of this issue necessarily disposes of plaintiff's contention that the recordings of the Undergraduate Court proceeding must be made available under the Public Records Law, codified at N.C. Gen. Stat. § 132-1 *et. seq.* The minutes (including recordings) of official meetings of a public body are "public records" under N.C.G.S. § 132-1 *et. seq.* N.C.G.S. § 143-318.10(e)(1996). However, N.C.G.S. § 143-318.10(e) further provides that "minutes . . . of a closed session conducted in compliance with G.S. 143-318.11 may be withheld from public inspection so long as public inspection would frustrate the purpose of a closed session." N.C.G.S. § 143-318.10(e). Since we have held that the closed session of the Undergraduate Court was authorized under N.C.G.S. § 143-318.11, we also hold that the recordings of the closed session may be withheld from public inspection pursuant to N.C.G.S. § 143-318.10(e).

[4] Plaintiff next contends that our state constitution open courts provision requires that Undergraduate Court proceedings be open to the public. Our state constitution provides: "Sec. 18. Courts shall be open. All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. In a civil action filed by a doctor against a hospital challenging suspension of his medical staff privileges, this Court recently held unconstitutional various trial court orders that closed pre-trial proceedings and sealed court records in which medical peer review materials were introduced or discussed. *Virmani v. Presbyterian Health Services Corp.*, 127 N.C. App. 629, 493 S.E.2d 310 (1997). We held that the open courts provision creates a strong presumption that civil court proceedings be kept open to the public and that "the occasion for closing presumptively open proceedings and sealing court records should be exceedingly rare." *Id.* at 645, 493 S.E.2d at 320.

Defendant argues, and the trial court ruled, that the Undergraduate Court is not a "court" under the open courts provision. We agree. In *Virmani*, the proceedings at issue were those of the Mecklenburg County Superior Court, one of the several superior courts of this State which constitute the Superior Court Division of

DTH PUBLISHING CORP. v. UNC-CHAPEL HILL

[128 N.C. App. 534 (1998)]

the General Court of Justice as established by the North Carolina Constitution and Chapter 7A of the General Statutes. *See Virmani*, 127 N.C. App. at 632, 493 S.E.2d at 313; N.C. Const. art. IV, § 2; N.C. Gen. Stat. § 7A-40 (1995). At its heart, the open courts provision serves to protect the institutional integrity of our state courts by constitutionally guaranteeing that justice is "administered openly in public view." *See Virmani*, 127 N.C. App. at 645, 493 S.E.2d at 320. Similarly, our Supreme Court, citing the open courts provision, previously held that willful misconduct and conduct prejudicial to the administration of justice occurred when a trial judge, *inter alia*, improperly removed a criminal proceeding from the public domain. *For e.g., In re Nowell*, 293 N.C. 235, 249-52, 237 S.E.2d 246, 255-57 (1977); *In re Edens*, 290 N.C. 299, 306-07, 226 S.E.2d 5, 9-10 (1976); *see also In re Stuhl*, 292 N.C. 379, 389-90, 233 S.E.2d 562, 568 (1977) (holding similarly in part because the judge "improperly removed the disposition of cases from public view in open court and transacted the court's business in secrecy").

This constitutional imperative to guarantee the integrity of our state courts is *not* at stake in regard to the Undergraduate Court proceedings because the Undergraduate Court not only *cannot* but, in fact, *does not* wield the judicial power of the State in its regulation of student conduct. Our state constitution vests the judicial power of the State as follows:

Section 1. Judicial power.

The judicial power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article.

N.C. Const. art. IV, § 1. Our state constitution authorizes the General Assembly to vest judicial power in administrative agencies as follows:

The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals from administrative agencies shall be to the General Court of Justice.

N.C. Const. art. IV, § 3. The General Assembly has vested judicial power in the General Court of Justice pursuant to N.C. Gen. Stat. § 7A-3 (1995) which provides, in pertinent part:

> Except for the judicial power vested in the court for the trial of impeachments, and except for such judicial power as may from time to time be vested by the General Assembly in administrative agencies, the judicial power of the State is vested exclusively in the General Court of Justice.

The Undergraduate Court is clearly not a "court" within the General Court of Justice as it is not part of any of the three divisions of the General Court of Justice as established by our state constitution and by the General Assembly. *See* N.C. Const. art. IV, § 2 and N.C. Gen. Stat. § 7A-4 (establishing the Appellate, Superior Court, and District Court Divisions of the General Court of Justice); N.C. Const. art. IV, §§ 5 - 10 and Chapter 7A, Subchapters I, II, III, and IV of the General Statutes (establishing and describing the components of the three divisions of the General Court of Justice). Although the North Carolina Constitution directs the General Assembly to establish the University of North Carolina, *see* N.C. Const. art. IX, § 8, the Constitution does not vest UNC, UNC-CH, or the UNC-CH Undergraduate Court with the judicial power of the State. In addition, we have not found any statute or cases providing that the UNC-CH Undergraduate Court, either directly or indirectly through UNC or UNC-CH, is an administrative agency vested with state judicial power by the General Assembly pursuant to N.C. Const. art. IV, §§ 1 & 3 and N.C.G.S. § 7A-3. For example, we have found no statute vesting power in UNC, UNC-CH, or in the UNC-CH Undergraduate Court analogous to that vested in the Office of Administrative Hearings (OAH) by N.C. Gen. Stat. § 7A-750 in accordance with N.C. Const. art. IV, § 3. *See* N.C.G.S. § 7A-750 (1995).

Furthermore, the UNC-CH Undergraduate Court *functionally* does not wield the power of the State as does a court in the General Court of Justice. Although the Undergraduate Court may impose some sanctions, all sanctions are administered by the Vice Chancellor for Student Affairs. The sanction of expulsion may be recommended by the Undergraduate Court, but may only be imposed or rescinded by the Chancellor. These sanctions are limited in scope in that they only regulate students' relationship with the University and do not have any dispositive impact on students' legal rights in the larger community. The Undergraduate Court's limited power to impose pun-

ishment contrasts sharply with the much broader enforcement powers exercised by a judge in the General Courts of Justice or by an administrative law judge. In addition, the UNC-CH Instrument of Student Governance explicitly differentiates University regulation of student conduct for the preservation of University interests from the civil and criminal law enforcement provided by state courts in the larger community to protect broader community and state interests.

Procedurally, the Undergraduate Court also differs markedly from a court in the General Court of Justice. The UNC-CH Chancellor has voluntarily adopted certain policies and procedures governing student disciplinary hearings in the Instrument of Student Governance. To some extent, these voluntarily adopted procedures resemble some of the procedures used in the courts of our General Court of Justice. However, there are important differences. For example, although the UNC-CH Undergraduate Court employs some evidentiary procedures similar to those in the North Carolina Rules of Evidence, the Instrument of Student Governance does not require or suggest that the Rules of Evidence be applied. In addition, although a student has a right to a student "defense counsel," the Undergraduate Court procedures explicitly prohibit use of a licensed attorney as an investigator or as a defense counsel or as a support person present during the proceeding. Since the UNC-CH Undergraduate Court cannot and does not wield the judicial power of the State in its regulation of student conduct, we hold that the UNC-CH Undergraduate Court is not a "court" within the meaning of our state constitution open courts provision.

We acknowledge the importance of the role of a student disciplinary body in the adjudication of alleged violations of university codes of student conduct. However, this body's powers are not derivative of our judiciary system nor or they limited by the necessary safeguards protecting a citizen in our court system; the Undergraduate Court can best serve in determining and punishing academic misconduct, not in serving as a substitute for our court system in non-academic matters.

[5] Even if the Undergraduate Court were properly categorized as a "court," the open courts provision does not require the Undergraduate Court proceedings to be open to the public. Our state constitution open courts provision has roots in the historic practice of having open criminal and civil trials. See Virmani, 127 N.C. App. at 637-46, 493 S.E.2d at 315-21; see also Gannett Co. v. DePasquale, 443 U.S. 368, 386 n.15, 61 L. Ed. 2d 608, 625 n.15 (1979) (discussing com-

mon law practice of public criminal and civil trials). Here, there is no record evidence that UNC student disciplinary proceedings, including UNC-CH Undergraduate Court proceedings, have been historically open to the public as have traditional civil and criminal trials. This Court has held that the open courts provision "does not create a constitutional right [of] the press and public to attend civil commitment proceedings." *See In re Belk*, 107 N.C. App. 448, 453, 420 S.E.2d 682, 685, *appeal dismissed and disc. review denied*, 333 N.C. 168, 424 S.E.2d 905 (1992). The *Belk* Court reached this holding in part because, prior to 1973, the civil commitment process, unlike traditional civil trials, did not require formal judicial hearings. *Belk*, 107 N.C. App. at 452, 420 S.E.2d at 684. Similarly, the proceedings of the Undergraduate Court, like the pre-1973 civil commitment process described in *Belk*, are not governed by the same procedures as the formal judicial hearings conducted by courts of our General Court of Justice. For these reasons, we hold UNC-CH's closure of the Undergraduate Court proceedings to the public did not violate Article I, § 18 of the North Carolina Constitution.

**[6]** Plaintiff finally contends that the closure of the Undergraduate Court proceedings violated the First Amendment of the United States Constitution. We disagree. The United States Supreme Court has held that the First Amendment provides the public with a presumptive right to attend certain criminal proceedings but the Court has not yet decided whether this right extends to civil proceedings. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 6-13, 92 L. Ed. 2d 1, 9-13 (1986) (*Press-Enterprise II*); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505-10, 78 L. Ed. 2d 629, 635-38 (1984) (*Press-Enterprise I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-07, 73 L. Ed. 2d 248, 255-57 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81, 65 L. Ed. 2d 973, 991-93 (1980) (plurality opinion). We have also not found any cases in which either the United States Supreme Court or a North Carolina appellate court has held that state university student court disciplinary proceedings, like those at issue here, are presumptively open to the public under the First Amendment.

In deciding whether the public had a First Amendment right to attend a state court criminal preliminary hearing, the United States Supreme Court applied the tests of experience and logic. *See Press-Enterprise II*, 478 U.S. at 8-13, 92 L. Ed. 2d at 9-13. In applying the experience test, we must assess "whether the place and process have historically been open to the press and general public." *See Press-*

*Enterprise II*, 478 U.S. at 8, 92 L. Ed. 2d at 10. Application of the logic test requires our evaluation of "whether public access plays a significant positive role in the functioning of the particular process in question." *See id.*

As discussed above, the record evidence does not show that UNC-CH student disciplinary proceedings have been historically open to the press and the general public. In addition, we are not persuaded that public access to the Undergraduate Court proceedings, on the record presented, would play a significant positive role in the functioning of these proceedings. We hold the First Amendment does not give the public a presumptive right of access to UNC-CH Undergraduate Court proceedings.

We affirm the judgment of the trial court.

Affirmed.

Judges LEWIS and MARTIN, John C., concur.