Shaun GAUMOND

v.

**TRINITY REPERTORY COMPANY.**

No. 2005–258–M.P.

Supreme Court of Rhode Island.

Nov. 14, 2006.

Glenn R. Friedemann, Esq., Providence, for Plaintiff.

Jason C. Preciphs, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

"Facts are stubborn things, * * * and whatever may be our wishes, our inclinations, or the dictums of our passions, they cannot alter the state of facts and

evidence."[1] The plaintiff, Shaun Gaumond (Gaumond or plaintiff), is before the Supreme Court pursuant to a writ of certiorari, seeking review of a Superior Court order denying his Motion to Quash three subpoenas served by the defendant, Trinity Repertory Company (Trinity or defendant), seeking production of an injury report that he contends is privileged. According to plaintiff, the records sought by Trinity are "confidential educational records" not subject to disclosure under the Individuals with Disabilities Educational Act, 20 U.S.C. § 1400 (IDEA),[2] and the Rhode Island Educational Records Bill of Rights (RIERBOR), G.L.1956 chapter 71 of title 16,[3] in concert with the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g.[4] The plaintiff asserts that the subject records are protected by a "school-disabled student privilege[.]" For the reasons stated herein, we affirm the order of the Superior Court.

## Facts and Travel

The events leading up to this controversy began on September 24, 2002, when Gaumond attended a production of "The Skin of Our Teeth"[5] at Trinity as part of a field trip sponsored by Central Falls High School. According to plaintiff, after an intermission, he was injured when he fell while descending the theater stairs because, he contends, the stairs and adjacent railing were unstable and in need of repair. On July 22, 2003, plaintiff filed suit against Trinity, seeking damages for injuries allegedly suffered as a result of his fall.

The dispute before this Court concerns an injury report that school employees prepared soon after the incident at Trinity, which report plaintiff argues is a confidential educational record, and thus privileged. The record discloses that school officials altered the original injury report at plaintiff's request to redact "misleading" and "inaccurate" information. The plaintiff maintains that as a student with disabilities, he had the right under the IDEA to request that inaccurate information in confidential educational records be expunged or redacted. *See* 20 U.S.C.

1. David McCullough, *John Adams* 68 (2001) (quoting John Adams).

2. 20 U.S.C. § 1400. The IDEA was passed after congressional findings were made that children with disabilities were being underserved educationally and that "it [was] in the national interest that the Federal Government have a role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law" for them. *Id.* at § 1400(c)(6). The stated purposes of the IDEA include ensuring that children with disabilities have a free public education available to them; ensuring that disabled students' rights and their parents' rights are protected; and ensuring that teachers, parents, and the states in general have the tools needed "to improve educational results for children with disabilities[.]" *Id.* at § 1400(d)(1)(A)-(C),(2) & (3).

3. General Laws 1956 chapter 71 of title 16. RIERBOR enumerates the rights that parents, legal guardians, and eligible students have available to them in regard to children's educational records. These rights include the right to inspect, copy, preserve, and comment on the records; the right to have the records kept confidential; and the right to reasonably amend or expunge inaccurate information contained in the records. Section 16–71–3.

4. 20 U.S.C. § 1232g. FERPA conditions state receipt of federal educational funding on state educational institutions' providing parental access to student educational records and the opportunity to challenge the content of such records. *Id.* at §§ 1232g(a)(1)(A) & 1232g(a)(2).

5. Thornton Wilder, *The Skin of our Teeth: A Play in Three Acts* (1942).

§§ 1412(a)(8); [6] 1417(c); [7] 34 C.F.R. § 300.567(a)(2006).[8]

Trinity first learned about the injury report in Gaumond's answers to interrogatories that referred to "a school nurse's report about the accident by the Central Falls School District[.]" Thereafter, plaintiff produced a version of the injury report during the deposition of Trinity's general manager, Christopher Jennings (Jennings deposition). The plaintiff asked that the document be sealed, but with the understanding that Trinity would have access to it "in the future to prepare any defense in this case."

The version of the injury report produced at the Jennings deposition was a brief description of the incident that states: "Going down stairs, held onto railing which gave way, at Trinity Theater." According to plaintiff's counsel, a Central Falls High School nurse had prepared the report. Counsel did not indicate that the report previously had been altered.

The first inkling that the report had been amended surfaced on May 10, 2005, during the deposition of Donald Blais (Blais), the Central Falls High School teacher who supervised the field trip to Trinity. Blais testified that he had authored an injury report after speaking with several of the other school employees who attended the field trip. According to Blais, his report differed markedly from the report that plaintiff had produced at the Jennings deposition and asked to be sealed.[9] Trinity filed a request for production of all versions of the injury report. Additionally, Trinity issued subpoenas, the goal of which was to uncover information about the changes made to the original report.

The plaintiff moved to quash the subpoenas and requested a protective order, alleging that the documents sought were confidential records of a student who falls under the protections of the IDEA and FERPA and were privileged. The Superior Court hearing justice denied the motion to quash and ordered the production of all versions of the injury report. However, he issued a protective order sealing from public disclosure "[a]ny and all documents produced pursuant to this Order." The plaintiff sought review in this Court by way of petition for writ of certiorari.

**6.** 20 U.S.C. § 1412(a)(8) states: "Confidentiality[:] Agencies in the State comply with *section 1417(c)* of this title (relating to the confidentiality of records and information)." (Emphasis added.)

**7.** 20 U.S.C. § 1417(c) states: "Confidentiality[:] The Secretary shall take appropriate action, in accordance with *section 1232g* of this title, to ensure the protection of the confidentiality of any personally identifiable data, information, and records collected or maintained by the Secretary and by State and local educational agencies pursuant to the provisions of this subchapter." (Emphasis added.)

**8.** The plaintiff states that the following Code of Federal Regulations section, used in conjunction with the above cited portions of the IDEA, establishes his right to redact incorrect material found in a confidential educational record:

"Amendment of records * * *

(a) A parent who believes that information in the education records collected, maintained, or used under this part is inaccurate or misleading or violates the privacy or other rights of the child may request the participating agency that maintains the information to amend the information." 34 C.F.R. § 300.567(a)(2006).

**9.** At a hearing before the Superior Court on July 27, 2005, Trinity's counsel said:

"I began to take a deposition of a teacher who was there, a Mr. Blais. He told me before the deposition that this report was changed. It was changed to the detriment of the defendant. What's been removed from the report, I believe, is the information from the teachers about what occurred."

## Issues Presented

Before this Court, plaintiff argues that the unamended versions of the injury report are protected from discovery by virtue of a "school-disabled student privilege." [10] He asserts that based on the IDEA, in conjunction with FERPA, confidential educational records are clothed with this privilege. The plaintiff also contends that he cannot be compelled to waive this privilege with respect to any previous inaccurate and misleading educational records and that the hearing justice erred by ordering their production.

Trinity disputes the availability of a "school-disabled student privilege." The defendant also argues that, even if the Court recognized such a privilege, plaintiff waived his right to assert the privilege when he produced an amended (and presumably more favorable to him) version during the Jennings deposition. According to defendant, because plaintiff placed the injury report in issue, he may not seek the safe harbor of privilege with respect to an unfavorable version.

Trinity also points to the affirmative representations Gaumond's counsel made that it would have access to the injury report to prepare for trial. Trinity asserts that Gaumond's actions justify invocation of the doctrine of judicial estoppel.

## Standard of Review

■ This Court limits its review on certiorari to "examining the record to determine if an error of law has been committed." *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I.1997) (quoting *Matter of Falstaff Brewing Corp. Re: Nar-*ragansett Brewery Fire, 637 A.2d 1047, 1049 (R.I.1994)). Our review is limited to an "examination of the record to determine whether any competent evidence supports the decision and whether the decision maker made any errors of law" or whether the "decision was 'patently arbitrary, discriminatory, or unfair.'" *Asadoorian v. Warwick School Committee*, 691 A.2d 573, 577 (R.I.1997) (quoting *D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374 (R.I.1992)).

## Privilege

"Facts do not cease to exist because they are ignored." [11] Before this Court, plaintiff argues that the hearing justice ordered "the forced and nonconsensual waiver of the privilege a disabled student has in preserving the confidentiality of his education records[.]" The plaintiff asks us to recognize a heretofore unknown privilege, the "school-disabled student privilege." According to plaintiff, this privilege is similar to the well recognized doctor-patient and attorney-client privileges. Although neither FERPA nor the IDEA specifically mentions a privilege for confidential educational records, plaintiff alleges that other courts have done so in situations similar to the case at bar. We disagree.

■ This Court consistently has declared "that privileges, in general, are not favored in the law and therefore should be strictly construed." *Moretti v. Lowe*, 592 A.2d 855, 857 (R.I.1991) (citing *Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644, 647 (Tex.1985)). [12] Mindful that the primary

---

10. It should be noted that neither version of the injury report mentions any disability to which plaintiff might be subject.

11. Attributed to Aldous Huxley, *Proper Studies* 247 from *The Home Book of Quotations* 611 (10th ed.1967).

12. *See also In re Grand Jury*, 103 F.3d 1140, 1157 (3rd Cir.1997) (rejecting privilege); *United States v. Davies*, 768 F.2d 893, 898–99 (7th Cir.1985) (listing a multitude of state and federal authorities rejecting privilege); *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th

function of the judicial process indisputably is truth-seeking, we have "declared that privileges do not aid the quest for truth, the core function of the adversary process[.]" *Pastore v. Samson*, 900 A.2d 1067, 1086 (R.I.2006).[13] "Privileges, by their nature," create limitations on the legal process that must be viewed with skepticism because they attempt to " 'shut out the light' on 'the ascertainment of the truth.' " *Id.* at 1078 (quoting *State v. Almonte*, 644 A.2d 295, 298 (R.I.1994)).

■ When a party who is resisting discovery of so-called confidential or protected information asserts a privilege, "[t]he burden of establishing entitlement to nondisclosure rests on the party resisting discovery." *Moretti*, 592 A.2d at 857. This Court has refused to recognize new privileges, even when a "statute manifests and effectuates an important legislative policy favoring confidentiality and generally prohibits disclosure of information[.]" *Mallette v. Children's Friend and Service*, 661 A.2d 74, 76 (R.I.1995) (holding that the statute establishing the confidentiality of Department of Children, Youth and Families' records did not create a testimonial privilege).

■ Furthermore, we have declared that a statute providing for privileges "must not be used as a shield to obstruct *proper* discovery of relevant information[.]" *Moretti*, 592 A.2d at 858 (emphasis added).[14] A party may not hide behind

confidentiality to avoid disclosure of unfavorable evidence. *See State v. Guido*, 698 A.2d 729, 734 (R.I.1997) (holding that a statute providing for confidentiality of medical records may not be used to shield relevant and material evidence from legal process); *see also In re Doe*, 717 A.2d 1129, 1135 (R.I.1998) (state prosecutor may not assert grand jury secrecy to avoid compliance with procedural protections for privileged medical records). At the same time, however, appropriate statutorily defined privileges do not cease to exist merely because documents are the subject of a subpoena; "[o]n the contrary, the privilege continues to exist, and the documents that are privileged still cannot be disclosed" except by strict compliance "with the requirements of any compulsory legal process that may be issued with respect to such documents[.]" *Washburn v. Rite Aid Corp.*, 695 A.2d 495, 497–98 (R.I.1997) (holding that pharmacy violated patient's confidentiality rights under the Confidentiality of Health Care Information Act, G.L.1956 chapter 37.3 of title 5, by improperly releasing prescription records to the plaintiff's estranged husband in a divorce proceeding).

In the case at bar, plaintiff is claiming the protections of the IDEA and RIERBOR in concert with FERPA. The confidentiality provisions of both the IDEA and RIERBOR [15] reference 20 U.S.C. § 1232g

---

Cir.1984) (construing privilege narrowly); *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977) (arguing that privilege hampers truth finding, and as such may be strictly construed).

**13.** *See also State v. von Bulow*, 475 A.2d 995, 1006 (R.I.1984) ("Because the attorney-client privilege limits the full disclosure of the truth, it must be narrowly construed.").

**14.** We note that *Moretti v. Lowe*, 592 A.2d 855, 856 (R.I.1991) involved the statutory

privilege set out in G.L.1956 § 23–17–25 that applies to medical peer review boards in cases of litigation against physicians. While application of such a privilege involved factual circumstances that differ from those in this case, our general observations in that case about privileges are applicable nonetheless.

**15.** Section 16–71–3(a)(7) states:
"The right to have the records kept confidential and not released to any other individual, agency or organization without prior written consent of the parent, legal

of FERPA, which requires that educational institutions safeguard the confidentiality of student records. Failure to do so may lead to a loss of federal funding for those agencies that, as a policy or practice, release educational records without prior parental or student consent. *See* 20 U.S.C. § 1232g. However, FERPA explicitly enumerates certain circumstances in which the release of records is permissible. 20 U.S.C. § 1232g (b)(2) states in pertinent part:

"No funds shall be made available under any applicable program to any educational agency or institution which has a *policy or practice* of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, *unless*—

(A) there is written consent from the student's parents * * *, or

(B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, *or pursuant to any lawfully issued subpoena,* upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency." (Emphases added.)

FERPA has been described as employing "a carrot-and-stick approach: the carrot is federal funding; the stick is the termination of such funding to any educational institution 'which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein * * *) of students without the written consent of their parents.'" *Frazier v. Fairhaven School Committee,* 276 F.3d 52, 68 (1st

Cir.2002) (quoting 20 U.S.C. § 1232g (b)(1)).

The plaintiff cites *DTH Publishing Corp. v. University of North Carolina at Chapel Hill,* 128 N.C.App. 534, 496 S.E.2d 8, 12 (1998) to support his argument that FERPA prevents discovery of the original unaltered version of the injury report prepared in response to the incident at Trinity. However, in that case, a newspaper sought access to disciplinary proceedings against two university students. *Id.* The court in *DTH Publishing* noted that "FERPA does not specifically employ the terms 'privileged' and 'confidential' but it clearly expresses the federal policy that student education records should not be widely disseminated to the *public* and, except in certain enumerated circumstances, should not be released without proper consent." *Id.* (Emphasis added.) Here, the trial justice's order does not contemplate any public disclosure at this juncture, but rather only allows Trinity to view the requested document under seal in preparing for litigation.

Similarly, plaintiff cites *State ex rel. Garden State Newspapers, Inc. v. Hoke,* 205 W.Va. 611, 520 S.E.2d 186, 189 (1999), for the proposition that FERPA "mandates the confidentiality of educational records." That case concerned whether a proceeding by a student against a school board and school administrative officials could be closed to the *public* and the media. *Id.* In the case before us, plaintiff is not seeking protection from the public disclosure of his educational records.

■■■ Finally, although the aforementioned statutes mandate the confidentiality of student records, confidentiality and privilege are two separate, albeit over-

guardian or eligible student, *except* to the extent that the release of the records is authorized by the provisions of *20 U.S.C.*

*§ 1232g or other applicable law or court process."* (Emphases added.)

lapping, legal concepts.[16] Confidentiality of a record or evidence is a mandatory, but not necessarily sufficient, precursor to establishing a privilege. We reiterate that "immunity from discovery is in derogation of both common-law and the general policy favoring discovery," as such, we do not easily embrace the creation of new privileges. *Moretti*, 592 A.2d at 857.[17] We emphasize that "[t]he mere reference in [a] statute to the confidential nature of * * * records * * * is insufficient to create a statutory privilege." *Pastore*, 900 A.2d at 1087. In this instance, on the basis of the record before us, we decline to hold that the document in dispute is protected by a privilege that plaintiff would have us create. Nonetheless, because the record in this case is so compelling, we shall address the issue of estoppel.

### Estoppel

Trinity also argues that plaintiff should be estopped from arguing that previous versions of the report are not discoverable because plaintiff produced a revised report, asked that it be sealed, and made affirmative representations that Trinity would have access to the sealed report to prepare this case. Thus, Trinity argues, plaintiff should be estopped from arguing that earlier versions of the report are not subject to discovery.

■ This Court previously has recognized the principle of judicial estoppel. *See, e.g., D & H Therapy Associates v. Murray*, 821 A.2d 691, 693–94 (R.I.2003); *Gross v. Glazier*, 495 A.2d 672, 675 (R.I.

1985).[18] "Because the rule is intended to prevent 'improper use of judicial machinery,' * * * judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Ordinarily, the application of estoppel is an extraordinary form of relief, that "will not be applied unless the equities clearly [are] balanced in favor of the part[y] seeking relief." *Southex Exhibitions, Inc. v. Rhode Island Builders Association, Inc.*, 279 F.3d 94, 104 (1st Cir. 2002) (applying Rhode Island law) (quoting *Greenwich Bay Yacht Basin Associates v. Brown*, 537 A.2d 988, 991 (R.I.1988)).

■ The doctrine of judicial estoppel is "driven by the important motive of promoting truthfulness and fair dealing in court proceedings." *D & H Therapy Associates*, 821 A.2d at 693. Judicial estoppel differs from such other forms of estoppel as promissory estoppel and equitable estoppel in that "judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole," rather than solely on the "relationship between the parties." *Id.* (citing 28 Am.Jur.2d *Estoppel and Waiver* § 34 (2000)). Of utmost importance in determining whether to apply the doctrine of judicial estoppel is whether the "party seeking to assert an inconsistent position would derive an unfair advantage * * * if not estopped." *New Hampshire*, 532 U.S. at 751, 121 S.Ct. 1808.

We previously have held that in the context of a criminal case, "a defendant

---

**16.** *See generally* Fred C. Zacharias, *Harmonizing Privilege and Confidentiality*, 41 S. Tex. L.Rev. 69 (1999).

**17.** *See also University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (declaring that "[w]e are especially reluctant to recognize a privilege in an area

where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself").

**18.** For more extensive discussion of the doctrine of judicial estoppel, *see New Hampshire v. Maine*, 532 U.S. 742, 749–56, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

may not complain of testimony on appeal when such testimony was brought out by defendant himself * * *." *State v. Harris,* 871 A.2d 341, 345–46 (R.I.2005). It seems to us that the facts in this case warrant a similar analysis.

■■■ In this instance, during the Jennings deposition, plaintiff, through his counsel, produced the revised injury report, failed to disclose that it had been redacted at his instance, and affirmatively represented that Trinity would have access to the report. Trinity argues that not only is plaintiff responsible for producing the document in the first place, but also that the report was altered in a manner that favored plaintiff. Because of this, Trinity contends that Gaumond should now be estopped from arguing that any unaltered versions of the same report are privileged and not subject to disclosure. We agree.

■■■ If Gaumond had wished to prevent discovery of the injury report, in any of its iterations, he should not have produced the revised version that he obviously intended to use to his advantage in pursuing his claim. Judicial estoppel is an appropriate remedy in this instance because the underlying purpose of the doctrine is " 'to protect the integrity of the judicial process' * * * by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " *New Hampshire,* 532 U.S. at 749–50, 121 S.Ct. 1808. The plaintiff will not now be permitted to prevent production of previous versions of the very document that he brought to light and sought to use to his benefit. "Judicial estoppel should be employed when a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.' " *Patriot Cinemas, Inc. v. General Cinemas Corp.,* 834 F.2d 208, 212 (1st Cir.1987) (quoting *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir.1953)).

### Conclusion

For the foregoing reasons we affirm the order of the Superior Court in all respects. We quash the writ, and return the records in this case to the Superior Court with our decision endorsed thereon.