DECISION
In this Wrongful Death Action, Plaintiffs have filed a Motion to Strike Objections and to Compel Production of Documents from Defendant Landmark Medical Center (Defendant). The issue before the Court is whether an interrogatory propounded by Plaintiffs is protected under a claim of privilege, such that Defendant may withhold its answer to that interrogatory. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 Facts/Travel
On June 13, 1994, Decedent Nota Nelson sustained a hip injury while being treated at Defendant's emergency department. She subsequently died from her injury, and Plaintiffs filed the ensuing instant action for wrongful death.
During the course of discovery, Plaintiffs propounded certain interrogatories to Defendant. In its answer to Interrogatory No. 9, Defendant identified sixteen documents listed in a Privilege Log for which it claimed a "Peer Review records/proceedings" privilege. The Plaintiffs object and have filed a Motion to Compel Production. *Page 2 
 Analysis
The issue before the Court is whether the documents identified by Defendant in its Privilege Log are protected under the so-called peer-review privilege. Provisions "pertaining to discovery generally are liberal, and are designed to promote broad discovery among parties during the pretrial phase of litigation." Henderson v.Newport County Regional Young Men's Christian Assn,966 A.2d 1242, 1246 (R.I. 2009). Rule 26(b)(1) of the Superior Court Rules of Civil Procedure provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ."
Privilege-protected data usually are not discoverable.See Henderson 966 A.2d at 1246. However, "privileges, in general, are not favored in the law and therefore should be strictly construed." Gaumond v. Trinity RepertoryCo., 909 A.2d 512, 516 (2006) (quoting Moretti v. Lowe,592 A.2d 855, 857 (R.I. 1991)). Furthermore, "the recognition of a privilege based on a confidential relationship . . . should be determined on a case-by-case basis." Upjohn Co. v. UnitedStates, 449 U.S. 383, 396 (1981). Accordingly,
 "A determination of the proper scope of a privilege demands a delicate balancing: `The privileges . . . are designed to protect weighty and legitimate competing interests. . . . T]hese exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.'" Pastore v. Samson, 900 A.2d 1067, 1074 (R.I. 2006) (quoting United States v. Nixon, 418 U.S. 683, 709, 710 (1974)).
Notwithstanding the forgoing, "certain privileges are recognized because they are deemed to serve such a vitally important public good that `transcend[s] the normally predominant principle of utilizing all rational means for ascertaining truth.'"Pastore, 900 A.2d at 1074 (quoting Trammel v. UnitedStates, 445 U.S. 40, 50 (1980)). With respect to the peer-review privilege, our Supreme Court has "acknowledged the social importance of `open *Page 3 
discussions and candid self-analysis in peer-review meetings to ensure that medical care of high quality will be available to the public.'" Pastore,900 A.2d at 1074 (quoting Moretti, 592 A.2d at 857).[1]
However, "[a] party may not hide behind confidentiality to avoid disclosure of unfavorable evidence." Gaumond, 909 A.2d at 517.
General Laws 1956 §§ 23-17-25 (a)[2] and § 5-37.3-7 (c)[3] both "create a privilege for the `proceedings' and `records' of peer-review boards, such that those documents shall not be *Page 4 
subject to discovery or be admissible in evidence."Pastore, 900 A.2d at 1074-75. Section 23-17-25(a) provides:
 "No person who was in attendance at a meeting of [a peer-review] board shall be permitted or required to testify as to any matters presented during the proceedings of that board or as to any findings, recommendations, evaluations, opinions, or other actions of that board or any members of the board. . . . [A] witness cannot be questioned about his or her testimony or other proceedings before that medical peer review board or about opinions formed by him or her as a result of those proceedings."
Thus, "the records and proceedings of a hospital's peer-review board are not discoverable or admissible in any civil case, except in an action involving the imposition of sanctions upon a physician." Cofone v. Westerly Hosp.,504 A.2d 998, 1000 (R.I. 1986). Indeed, "even if a party moves to compel production of the documents protected by § 23-17-25, the court is statutorily prohibited from granting such an order."Id. However, while the "records and the proceedings which originate with the peer-review board are immune from discovery and inadmissible," id. "[n]othing contained in this section shall apply to records made in the regular course of business by a hospital or other provider of health care information." Sec. 23-17-25(a) Furthermore, *Page 5 
"[d]ocuments or records otherwise available from original sources are not to be construed as immune from discovery or used in any civil proceedings merely because they were presented during the proceedings of the committee." Id.
In summary, the peer-review privilege entitles "a hospital to withhold `all records and proceedings' before the peer-review board, even those pertaining to the plaintiff in [a particular] case."Pastore, 900 A.2d at 1076. However, "only the records and the proceedings which originate with the peer-review board are immune from discovery and inadmissible." Id. Furthermore, a peer-review statute "should be strictly construed because "privileges, in general, are not favored in the law and this immunity from discovery is in derogation of both common-law and the general policy favoring discovery." Id.
(internal quotations omitted).
It is well established that "[t]he burden of establishing entitlement to nondisclosure rests on the party resisting discovery[,]" [because] [t]he public purpose of the peer-review privilege is not served when the privilege created in the peer-review statute is applied beyond what was intended and what is necessary to accomplish the public purpose." Id.
(internal quotations omitted). Furthermore, it is axiomatic that "[t]he privilege must not be permitted to become a shield behind which a physician's incompetence, impairment, or institutional malfeasance resulting in medical malpractice can be hidden from parties who have suffered because of such incompetence, impairment, or malfeasance." Id.
In light of the foregoing, it is clear that the General Assembly wished to
 "protect only `records' and `proceedings' of peer-review boards. Section 23-17-25(a); § 5-37.3-7(c). Both statutes also do not protect `[d]ocuments or records otherwise available from original sources.' Section 23-17-25(a); § 5-37.3-7(c) (providing that `[c]onfidential health care information discoverable or admissible from original sources shall not be construed as immune from discovery or use in any proceeding'). Furthermore, both statutes also include other limitations on the scope of the privilege that *Page 6 
pertain to information generated by entities other than a peer-review board. Section 23-17-25(a) (providing that `[n]othing contained in this section shall apply to records made in the regular course of business by a hospital or other provider of health care information'); § 5-37.3-7(c) (providing that a witness before a peer-review board cannot be prevented from testifying `as to matters within his or her knowledge . . ., but that witness cannot be questioned about his or her testimony or other proceedings before that medical peer review board or about opinions formed by him or her as a result of those proceedings'). Pastore, 900 A.2d at 1077.
Section 23-17-40 of the General Laws protects certain enumerated events that must be reported to the Rhode Island Department of Health ("DOH"). It provides in pertinent part:
 "c) Any reportable incident in a hospital that results in patient injury as defined in subsection (d) shall be reported to the department of health with [sic] seventy-two (72) hours or when the hospital has reasonable cause to believe that an incident as defined in subsection (d) has occurred. The department of health shall promulgate rules and regulations to include the process whereby health care professionals with knowledge of an incident shall report it to the hospital, requirements for the hospital to conduct a root cause analysis of the incident or other appropriate process for incident investigation and to develop and file a performance improvement plan, and additional incidents to be reported that are in addition to those listed in subsection (d). In its reports, no personal identifiers shall be included. The hospital shall require the appropriate committee within the hospital to carry out a peer review process to determine whether the incident was within the normal range of outcomes, given the patient's condition. The hospital shall notify the department of the outcome of the internal review, and if the findings determine that the incident was within the normal range of patient outcomes no further action is required. If the findings conclude that the incident was not within the normal range of patient outcomes, the hospital shall conduct a root cause analysis or other appropriate process for incident investigation to identify causal factors that may have lead to the incident and develop a performance improvement plan to prevent similar incidents from occurring in the future. The hospital shall also provide to the department of health the following information:
 (1) An explanation of the circumstances surrounding the incident; *Page 7 
 (2) An updated assessment of the effect of the incident on the patient;
 (3) A summary of current patient status including follow-up care provided and post-incident diagnosis; and
 (4) A summary of all actions taken to correct identified problems to prevent recurrence of the incident and/or to improve overall patient care and to comply with other requirements of this section.
 (d) Incidents to be reported are those causing or involving:
 (1) Brain injury;
 (2) Mental impairment;
 (3) Paraplegia;
 (4) Quadriplegia;
 (5) Any type of paralysis;
 (6) Loss of use of limb or organ;
 (7) Hospital stay extended due to serious or unforeseen complications;
 (8) Birth injury;
 (9) Impairment of sight or hearing;
 (10) Surgery on the wrong patient;
 (11) Subjecting a patient to a procedure other than that ordered or intended by the patient's attending physician;
 (12) Any other incident that is reported to their malpractice insurance carrier or self-insurance program;
 (13) Suicide of a patient during treatment or within five (5) days of discharge from an inpatient or outpatient unit (if known);
 (14) Blood transfusion error; and
 (15) Any serious or unforeseen complication, that is not expected or probable, resulting in an extended hospital stay or death of the patient.
 (e) This section does not replace other reporting required by this chapter.
 (f) Nothing in this section shall prohibit the department from investigating any event or incident.
 (g) All reports to the department under this section shall be subject to the provisions of § 23-17-15. In addition, all reports under this section, together with the peer review records and proceedings related to events and incidents so reported and the participants in the proceedings shall be deemed entitled to all the privileges and immunities for peer review records set forth in § 23-17-25." Sec. 23-17-40.
According to the language of this provision, reportable incidents, as defined by the statute, must be reported to the DOH. Accordingly, "[t]he hospital shall require the appropriate *Page 8 
committee within the hospital to carry out a peer review process to determine whether the incident was within the normal range of outcomes, given the patient's condition." Sec. 23-17-40(c). The findings of such an internal review also must be reported to the DOH. Id. If the findings fall outside the normal range of patient outcomes, a root cause analysis or other appropriate investigation must be conducted to identify the causal factors and to plan the prevention of any such incidents in the future.See id.
During the course of discovery in the present case, Plaintiffs propounded certain interrogatories to Defendant. Specifically, in Interrogatory No. 9, Plaintiffs posed the following question to Defendant:
 "Was the care and treatment of the decedent ever the subject of a peer review meeting or process?" If so, identify
 a. the date or dates of each meeting;
 b. where said meeting(s) took place;
 c. identify the name of each person present at each meeting;
 d. identify all documents submitted or prepared for said meeting(s); and
 e. identify all documents produced as a result of said meeting(s)."
The Defendant objected and identified sixteen documents that it had listed in a Privilege Log and for which it claimed a "Peer Review records/proceedings" privilege. In its answer, Defendant stated that "A Root Cause Committee Meeting was conducted in accordance with Landmark By-Laws on June 23, 2009[,] because Ms. Nelson had sustained a broken hip (Sentinel Event) in the Emergency Department." The Defendant then listed the individuals who attended this "Root Cause" meeting. Referring to the Privilege Log, Defendant asserted that the "Documents produced as a result of the Root Cause Committee Meeting are protected from discovery as `records' of a peer review committee." The documents listed as relating to this *Page 9 
alleged "Root Cause Committee Meeting" constituted the first eight documents listed in Defendant's Privilege Log.[4]
With respect to the ninth Privilege Log document — a "Mortality Review Worksheet" prepared by a single physician — Defendant simply asserted, without more, that the document "is protected from discovery." Said document was not connected to any meeting. Documents ten and eleven were associated with an alleged "Physician Peer Review meeting" conducted on September 23, 2009. The twelfth document, dated August 25, 2009, was a written "Emergency Department Physician Case Review." Like the Mortality Review Worksheet, it was prepared by a single physician and "no meeting was conducted in connection with this review." The final four documents allegedly were associated with "[a] Department of Surgery Review meeting" that was conducted on October 19, 2009. The Defendant asserts that these documents were "produced as a result of the Root Cause Committee [and] are protected from discovery as `records' of the peer review committee."
According to § 23-17-40, before conducting a "Root Cause" analysis of a reportable incident, a hospital first must inform the DOH of such reportable incident. Next, it conducts a peer process review to determine if the incident was outside the normal range of patient outcomes. If it determines that the incident was outside the normal range, then the hospital must perform a "Root Cause" analysis or similar-type investigation to determine the cause of the reportable incident, and to develop an appropriate plan designed to prevent similar incidents in the future. See § 23-17-40.
In the instant matter, Defendant asserted a peer-review privilege for all of the documents in its Privilege Log. As stated, documents 1-8 and 13-16 were related to purported "Root Cause" *Page 10 
meetings that were conducted on June 23, 2009 and October 19, 2009. Although Defendant did not assert specifically that it was claiming a privilege under § 23-17-40 for any of its Privilege Log documents, any reliance upon that provision's protections would not be available to Defendant because it failed to follow the statute's reporting requirements.
Section 23-17-40 clearly requires that a hospital must inform the DOH of all reportable incidents. Once invoked, the statute then would protect related investigations performed by the hospital. Here, Defendant did not file a § 23-17-40 report of the incident to the DOH.[5] Consequently, it may not now claim that any of its "[d]ocuments are protected from discovery as `records' of a peer review committee" pursuant to § 23-17-40. Considering that the documents are not protected from discovery under § 23-17-40, the Court now must determine whether they are protected as peer-review board "proceedings" and "records" under §§ 23-17-25(a) and § 5-37.3-7(c).
The record reveals that Defendant's response to Interrogatory No. 9 was vague and conclusory. In its Privilege Log, Defendant simply declared that the documents are protected as "Peer Review records and proceedings." Furthermore, Defendant admitted that two of the documents — the "Mortality Review" and the "Emergency Department Physician Case Plan — were not even presented at any of these alleged peer review meetings. In its Answer, Defendant grouped the documents under labels such as: Root Cause Committee Meeting; Mortality Review; Physician Peer Review meeting; Emergency Department Physician Case Review; and, Department of Surgery Review meeting." By utilizing vague and conclusory statements in its Answer, Defendant has failed to meet its burden of establishing its entitlement to the *Page 11 
nondisclosure of its Privilege Log documents. Consequently, Plaintiffs' Motion to Compel is granted.
[1] General Laws 1956 § 5-37-1(11)(i) defines a peer-review board as:
 "any committee of a state or local professional association or society including a hospital association, or a committee of any licensed health care facility, or the medical staff thereof, or any committee of a medical care foundation or health maintenance organization, or any committee of a professional service corporation or nonprofit corporation employing twenty (20) or more practicing professionals, organized for the purpose of furnishing medical service, or any staff committee or consultant of a hospital service or medical service corporation, the function of which, or one of the functions of which is to evaluate and improve the quality of health care rendered by providers of health care service or to determine that health care services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area and shall include a committee functioning as a utilization review committee under the provisions of 42 U.S.C. § 1395 et seq. (Medicare law) or as a professional standards review organization or statewide professional standards review council under the provisions of 42 U.S.C. § 1301 et seq. (professional standards review organizations) or a similar committee or a committee of similar purpose, to evaluate or review the diagnosis or treatment of the performance or rendition of medical or hospital services which are performed under public medical programs of either state or federal design."
Section 5-37-1(11)(ii) defines it as:
 "the board of trustees or board of directors of a state or local professional association or society, a licensed health care facility, a medical care foundation, a health maintenance organization, and a hospital service or medical service corporation only when such board of trustees or board of directors is reviewing the proceedings, records, or recommendations of a peer review board of the above enumerated organizations."
[2] General Laws 1956 § 23-17-25(a) provides:
 "Neither the proceedings nor the records of peer review boards as defined in § 5-37-1 shall be subject to discovery or be admissible in evidence in any case save litigation arising out of the imposition of sanctions upon a physician. However, any imposition or notice of a restriction of privileges or a requirement of supervision imposed on a physician for unprofessional conduct as defined in § 5-37-5.1 shall be subject to discovery and be admissible in any proceeding against the physician for performing, or against any health care facility or health care provider which allows the physician to perform the medical procedures which are the subject of the restriction or supervision during the period of the restriction or supervision or subsequent to that period. Nothing contained in this section shall apply to records made in the regular course of business by a hospital or other provider of health care information. Documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any civil proceedings merely because they were presented during the proceedings of the committee."
[3] General Laws 1956 § 5-37.3-7(c) provides:
 "Except as provided in this section, the proceedings and records of medical peer review boards shall not be subject to discovery or introduction into evidence. No person who was in attendance at a meeting of that board shall be permitted or required to testify as to any matters presented during the proceedings of that board or as to any findings, recommendations, evaluations, opinions, or other actions of that board or any members of the board. Confidential health care information discoverable or admissible from original sources shall not be construed as immune from discovery or use in any proceeding merely because that information was presented during proceedings before that board, nor is a member of that board or other person appearing before it to be prevented from testifying as to matters within his or her knowledge and in accordance with the other provisions of this chapter, but that witness cannot be questioned about his or her testimony or other proceedings before that medical peer review board or about opinions formed by him or her as a result of those proceedings."
[4] The first document listed in the Privilege Log, entitled, "Root Cause Committee Meeting Minutes" was dated June 25, 2009. The eighth document, a "Memorandum" allegedly "regarding implementation of processes following Root Cause Committee Meeting[,]" also was dated June 25, 2009. Documents 2-6 are listed as undated.
[5] Indeed, it is not even clear whether the incident in question constituted a reportable incident as set forth in § 23-17-40.

 *Page 1