

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE UNIVERSITY OF TEXAS AT AUSTIN and JAY HARTZELL, in his Official Capacity as Interim President of THE UNIVERSITY OF TEXAS AT AUSTIN, | § § § § | No. 08-20-00157-CV Appeal from the |
| Appellants/Cross-Appellees, | § | 353rd Judicial District Court |
| v. | § | of Travis County, Texas |
| GATEHOUSE MEDIA TEXAS HOLDINGS, II, INC., d/b/a AUSTIN AMERICAN-STATESMAN, | § § | (TC # No. D-1-GN-19-007002) |
| Appellee/Cross-Appellant. | § | |

**DISSENTING OPINION**

The mechanics for obtaining public information from a governmental entity in Texas is intended to be straightforward. Under the Texas Public Information Act (PIA), the requestor makes its request to a public entity who generally then has ten days to either respond with the information or initiate a request for an opinion letter from the Office of the Attorney General (OAG).[1] By statute, public records must be produced unless they are exempt from production. The process is

---

[1] TEX.GOV'T CODE ANN. § 552.221(d); § 552.301; *see also City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) (discussing governmental body's duties in responding to a PIA request).

more complicated, however, when dealing with certain student records. The federal government's Department of Education has its own rules for the release of educational information. The PIA has a specific exemption for student records, which dovetails with the federal statute. And the Texas Attorney General, based on a Department of Education's policy directive, will not review certain educational records. Those dynamics are in play in this appeal.

In my view, and based on existing precedent, the University of Texas properly handled the public information request that Gatehouse Media Texas Holdings, II, Inc. (the Statesman) served on it. But based on the majority's disposition, the University must turn over information it likely regards as confidential student records and must pay a sizeable attorney's fee award. I respectfully dissent.

### A. The Release of Final Results Information is not Mandatory Under FERPA or the PIA

The Family Educational Rights and Privacy Act of 1974 (FERPA) holds two distinct hammers over the head of educational institutions. The first threatens to take away federal funding from educational institutions that have a policy or practice of denying parents the right to review their child's educational records. The second threatens to take away funding from institutions that have a policy or practice of disclosing a student's educational records, or personally identifiable information (PII) contained in those records, to third-parties—excepting certain listed individuals or entities—without parental consent. 20 U.S.C.A. § 1232g(a), (b).

Complicating this regime, federal regulations broadly define PII to include not just a student's name or address, but to also include "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty[.]" 34 C.F.R. § 99.3(f); *see also Press-Citizen Co., Inc. v. Univ.*

2

*of Iowa*, 817 N.W.2d 480, 485-86 (Iowa 2012) (discussing the need to redact PII to avoid disclosing either directly or indirectly a student's identity without parental consent). FERPA also broadly defines an educational record to be any record that "(i) contain[s] information directly related to a student; and (ii) are maintained by an educational agency or institution. . . ." 20 U.S.C.A. § 1232g(a)(4)(A). FERPA further allows an educational institution to include information about certain student disciplinary actions as part of educational record. *Id.* § 1232g(h)(1).

Relevant here, FERPA carves out a "final-results" exception which allows an educational institution to release disciplinary information in a student's educational record. *See* 20 U.S.C.A. § 1232g(b)(6)(B), (C). This exception provides that "[n]othing in this section shall be construed to prohibit an institution of postsecondary education from disclosing the final-results of any disciplinary proceeding" in which a student is found to have violated the institution's rules or policies related to a violent crime or a nonforcible sex offense. *Id.* 20 U.S.C.A. § 1232g(b)(6)(B). Under the exceptions, "final-results" information includes only the name of the student, the violation committed, and any sanction imposed by the institution on that student. It also might "include the name of any other student, such as a victim or witness, [but] only with the written consent of that other student." *See* 20 U.S.C.A. § 1232g(b)(6)(C)(ii). Thus, while Congress intended to protect a student's disciplinary records from public release, it still allows for their disclosure in limited circumstances. *See United States v. Miami Univ.*, 294 F.3d 797, 812-13 (6th Cir. 2002) (recognizing that although Congress intended to protect disciplinary records from disclosure, it "carefully permitted" schools to release final-results information).

But nothing in FERPA suggests that Congress intended to *require* educational institutions to release final-results information. Instead, by stating that institutions are not prohibited from

3

disclosing the information, Congress only intended to grant them the discretion to do so. This conclusion flows from Congress's use of mandatory release language for some records (like a parent's right to obtain their child's record) in contrast to the permissive language addressing the final-results exception. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005) (noting significance of Congress's use of the term "may" in "contraposition" to use of the term "shall" in other portions of a statute in determining Congress's intent to make a provision mandatory). And in turn, Congress's use of such permissive language allows states to make their own decisions in whether they wish to require their state funded educational institutions to release final-results information or whether they wish to leave it to the institutions' discretion. *See DTH Media Corp. v. Folt*, 841 S.E.2d 251, 262-63 (N.C. 2020), *cert. denied sub nom. Guskiewicz v. DTH Media Corp.*, 141 S.Ct. 1126 (2021) (recognizing that FERPA did not preempt the North Carolina Public Records Act to prohibit a state university from releasing the final-results of a disciplinary proceeding in accordance with the requirements of the state's Act); *Caledonian-Record Publ'g Co., Inc. v. Vermont State Colleges*, 833 A.2d 1273, 1274, 1278 (Vt. 2003) (recognizing that FERPA created a discretionary exception to the prohibition against disclosing student records by permitting the release of final results information, but that Vermont's public information act mandated their release), *citing* VT.STAT.ANN. tit. 1, § 317(11) ("Student records *shall* be made available upon request under the provisions of [FERPA] (emphasis added)").

In Texas, the PIA contains two sections addressing the confidentiality of student records, but neither section expressly addresses whether final-results information is subject to mandatory release or not. First, section 552.026 of the PIA broadly states that: "This chapter does not require the release of information contained in education records of an educational agency or institution, except in conformity with [FERPA]." TEX.GOV'T CODE ANN. § 552.026. By requiring

4

"conformity" with FERPA, this section of the PIA only requires a state funded educational institution to release information in a student's educational record when FERPA correspondingly requires its release—such as when the information is requested by a parent. *See Conformity*, Merriam-Webster, https://www.merriam-webster.com/dictionary/conformity (last visited June 8, 2021) (defining "conformity" as being "correspondence in form, manner or character," or an "action in accordance with some specified standard of authority."). But because FERPA does not require the release of final-results information to third parties, neither does section 552.026 require its release.

Nor does section 552.114 of the PIA require state funded educational institutions in Texas to release final-results information to third parties. Section 552.114 first provides that student records are considered "confidential and excepted from the requirements of Section 552.021 if it is information in a student record at an educational institution funded wholly or partly by state revenue." TEX.GOV'T CODE ANN. § 552.114(b). It then sets forth only four situations in which disclosure is required, including when the request is made by an educational institution; a student or the student's parent, legal guardian or spouse; a person conducting a child abuse investigation; or an "applicant for admission" to an educational institution related to his or her application. TEX.GOV'T CODE ANN. § 552.114(c), (e). Nothing in section 552.114 expressly requires or prohibits the release of final-results information.

The legislature provided a catch-all provision in section 552.114 that mimics the permissive language used in FERPA for information requested by other individuals or entities not in the above list. Section 552.114 states that: "This subsection *does not prohibit* the disclosure . . . of information included in an education record if the disclosure . . . is authorized by [FERPA] (emphasis added)." *Id.* § 552.114(b). So like FERPA which "authorizes" but does not require the

5

release of final-results information, section 552.114(b) also simply gives an educational institution the discretion to release final-results information in redacted form.[2] *See generally San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 622 (Tex. 2020) ("Authorized" means "[t]o grant authority or power to" or "[t]o give permission for."); *see also Authorize*, Black's Law Dictionary 159 (10th ed. 2014) (defining "authorize" as "to give legal authority; to empower. . . . [t]o formally approve").

The permissive nature of this section is buttressed in section 552.114(d), which expressly gives a state-funded educational institution the discretion to redact any confidential information from a student's educational record before disclosing information that is "authorized" to be released under FERPA, "without requesting a decision from the attorney general." *See* TEX.GOV'T CODE ANN. § 552.114(d) ("Except as provided by Subsection (e), an educational institution may redact information covered under Subsection (b) from information disclosed under Section 552.021 without requesting a decision from the attorney general.").

## B. The University was not Required to Seek an OAG Opinion

When a governmental body receives a request for information that it believes is excepted from disclosure under one of the exceptions set forth in the PIA, it must timely submit the request to the Open Records Division of the OAG and ask for a decision on whether the information fits within one of the specified exceptions. *Id*. § 552.301(a). The procedural thicket in this case largely turns on this provision, because the failure to timely request an opinion results in a presumption that the information is "subject to required public disclosure and must be released unless there is a compelling reason to withhold the information." *Id*. § 552.302. And that presumption sets the

---

[2] Had the legislature intended to require the release of such information, it knew how to do so, as it used mandatory language when requiring the release of information to certain specified categories of requesters, and it could have easily included a section requiring the mandatory release of final-results information as well, but chose not to.

stage, as explained by the majority, for how the University could have failed to meet its summary judgment burdens in this case.

But the PIA carves out an important exception to this requirement. An OAG decision is only required "if there has not been a previous determination about whether the information falls within one of the [specified] exceptions." *Id*. § 552.301(a). Here, I believe that the OAG has made a "previous determination"—in fact many of them—that an OAG decision is unnecessary when an educational institution decides to withhold educational records protected by FERPA.

### *1. The OAG's previous determinations and the DOE's instructions to the OAG*

Although not defined in the PIA itself, the OAG recognizes that "previous determinations" can take two forms. *See* Tex. Att'y Gen. ORD 673 (2001). First, a previous determination may be made as to a governmental body's right to withhold the precise information being requested—which is not the case here. *Id.* Another form of previous determination—which does fit here—is when the OAG has made a global determination on whether records fit within a specified category of information under the PIA. *Id*. And when there is such a previous determination, an entity may withhold requested information without the need for an OAG opinion. *Id.*; *see also Houston Chronicle Publ'g Co. v. Mattox*, 767 S.W.2d 695, 698 (Tex. 1989) (recognizing that the PIA "does not require a previous determination on the specific piece of information [at issue in a given request]; it allows the Attorney General to explicitly refuse to render a decision if he decides that a previous determination has been made regarding the category of information to which the request belongs.").

In Open Records Decision No. 673, the OAG elaborated on this second category of "previous determinations," setting out the criteria for deciding whether the OAG has made such a determination:

(1) the requested records or information at issue fall within a specific, clearly delineated category of information about which this office has previously rendered a decision; (2) the previous decision is applicable to the particular governmental body or type of governmental body from which the information is requested; (3) the previous decision concludes that the specific, clearly delineated category of information is or is not excepted from disclosure under the Act; (4) the elements of law, fact, and circumstances are met to support the previous decision's conclusion that the requested records or information at issue is or is not excepted from required disclosure; and (5) the previous decision explicitly provides that the governmental body or bodies to which the decision applies may withhold the information without the necessity of again seeking a decision from this office.

*See* Tex. Att'y Gen. ORD 673 (2001). Significant to this appeal, the OAG determined that it made a "previous determination" in Open Records Decision No. 634, when it ruled that an educational agency or institution could "withhold from public disclosure information that is protected by [FERPA] and excepted from required public disclosure by section 552.101 as 'information considered to be confidential by law,' *without the necessity of requesting an attorney general decision as to that exception* (emphasis in the original)."[3] *Id*., *citing* Open Records Decision No. 634 at 10 (1995).

Seeking an OAG opinion would be problematic in any event. In 2006, the United States Department of Education (DOE) informed the OAG that it was prohibited from making determinations of whether and how an educational institution must release—or withhold—information in educational records protected by FERPA.[4] In the letter, the DOE reasoned that the OAG is not on the list of entities to which an educational institution may release information in a

---

[3] Specifically, the OAG stated that: "[Open Records Decision No. 634] constitutes a previous determination for requested records or information if: the requested information falls within the specific, clearly delineated category of information protected by FERPA (criterion "1"), and the governmental body from which the information is requested is an educational agency or institution as that term is defined in FERPA (criterion "2"). This is because the decision concludes that the information is excepted from disclosure under section 552.101 of the Government Code (criterion "3"), the law, facts, and circumstances on which the conclusions of Open Records Decision No. 634 were based equally apply to the present request (criterion "4"), and the decision explicitly authorizes an educational agency or institution to withhold the information without the need for again seeking a decision from this office (criterion "5")." Open Records Decision No. 673 (2001).

[4] *See* https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/20060725-USDOE-FERPA.pdf.

student's educational records—such as the institution's in-house legal counsel or other authorized representative—without parental consent. And the DOE therefore concluded that an educational institution may not submit unredacted information in a student's educational record to the OAG, without parental consent, to receive a decision on what information should be redacted from an educational record before it is released to a third-party requester. Accordingly, it advised the OAG that "[f]or these reasons, FERPA does not permit an educational agency or institution in Texas to disclose, without parental consent, education records to the OAG for the purpose of determining whether it has complied with the PIA or whether it has redacted more than is necessary under FERPA."[5]

As explained in its 2022 Public Information Handbook, the OAG has concluded that due to the DOE's policy prohibiting it "from reviewing . . . education records to determine whether appropriate redactions under FERPA have been made," it will not address "the applicability of FERPA to any records submitted as part of a request for decision" and that instead, "[s]uch determinations under FERPA must be made by the educational authority in possession of the education records." *2022 Public Information Handbook*, Office of the Attorney General, p. 124-25.[6] In addition, the Austin Court of Appeals—whose precedent we must follow—has relied on the OAG's interpretation of the 2006 DOE letter in holding that "neither this Court, nor the trial court, nor the OAG is the proper entity to interpret FERPA and its application" to an educational institution's records, and that the institution is therefore responsible for making its own "FERPA determinations" when disclosing educational records. *See B.W.B. v. Eanes Indep. Sch. Dist.*,

---

[5] In reaching this conclusion, the DOE also found it significant that FERPA only gives parents and eligible students the right to inspect and review education records, but gives no such right to third-party requesters, and therefore, an educational institution can redact virtually any information from an educational record before providing it to a third-party requester without causing a "FERPA compliance issue."

[6] *See* https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/publicinfo_hb.pdf

9

No. 03-16-00710-CV, 2018 WL 454783, at *8 (Tex.App.--Austin Jan. 10, 2018, no pet.) (mem. op.), *citing* Tex.Att'y Gen. OR2015–00433; *see also Franklin Ctr. for Gov't v. Univ. of Tex. Sys.*, No. 03-19-00362-CV, 2020 WL 7640146, at *1 (Tex.App.--Austin Dec. 22, 2020, pet. granted) (mem. op.) (*citing B.W.B.* for the proposition that "determinations about disclosure of FERPA—protected information must be made by the institution from whom it is requested, [as] 'neither this Court, nor the trial court, nor the Office of the Attorney General of Texas is the proper entity' to interpret FERPA's application to an educational institution's records");[7] *see also IDEA Pub. Sch. v. Socorro Indep. Sch. Dist.*, No. 13-18-00422-CV, 2020 WL 103853, at *2 (Tex.App.--Corpus Christi Jan. 9, 2020, pet. denied) (mem. op.) (same).

## 2. Disciplinary records are protected by FERPA

In part, the majority sidesteps the application of the OAG's "previous determinations" by concluding that final-results information derived from a student's disciplinary records is not protected by FERPA, and that requests for such information therefore do not come under those previous determinations. I disagree, as I believe that student disciplinary records fall within a delineated category of information protected by FERPA and are also excepted from public disclosure under section 552.101, as they are deemed "confidential by law" by section 552.114(b) of the PIA.

Although subject to some dispute, most courts interpreting FERPA recognize that disciplinary records—which includes disciplinary information redacted into a "final-results" format—are considered part of a student's "education record." *See Caledonian-Record Publ'g Co., Inc.*, 833 A.2d at 1274, 1276 (recognizing that whether "student disciplinary proceedings are 'education records' as defined by FERPA has . . . been the subject of sharp dispute" but siding

---

[7] The Texas Supreme Court granted review to consider whether the attorney-client privilege applied to protect certain records held by the institution.

with the courts that have found them to be protected by FERPA); *see also DTH Publ'g Corp. v. Univ. of N. Carolina at Chapel Hill*, 496 S.E.2d 8, 13 (N.C. App. 1998) ("Given the breadth of FERPA's definition of 'education records' . . . the student [disciplinary] records at issue in this appeal are protected as 'education records' under FERPA"); *Miami Univ.*, 294 F.3d at 812-13 (recognizing that both disciplinary records and final-results information are considered protected educational records under FERPA). While FERPA lists several types of records held by educational institutions that are *not* considered protected education records—such as certain law enforcement records—neither disciplinary records nor final-results information are included in this list. 20 U.S.C.A. § 1232g(a)(4)(B); *see DTH Publ'g Corp.*, 496 S.E.2d at 13 (recognizing that FERPA does not include disciplinary records in its list of materials that are not considered "education records").

More importantly, the subsection in FERPA which discusses the exception for final-results information is entitled "Release of educational records [and] exceptions . . ." and there would be no reason for Congress to discuss final-results information in this (or any other) subsection, if it did not consider them to be part of a student's education records. 20 U.S.C.A. §1232g(b)(6)(A), (B), (C); *see Miami Univ.*, 294 F.3d at 812-13 (recognizing that "if Congress believed that student disciplinary records were not education records under . . . FERPA, then these sections [addressing disciplinary records and final-results information] would be superfluous."). That FERPA requires educational institutions to severely redact information from a student's disciplinary records before releasing the remaining information only serves to reinforce the conclusion that Congress considered these records to be protected by FERPA—as no such redaction would be required if they were not considered confidential under FERPA in their unredacted form.

Because disciplinary records are considered confidential under both the PIA and FERPA, and are only permitted to be released in redacted form, they fit neatly within the OAG's "previous determinations" that an educational institution need not seek an OAG decision before redacting or withholding the requested information. This conclusion is also supported by the response that the OAG provided to the University's belated request for a decision about whether it could withhold the final-results information requested by the Statesman. In its response, the OAG advised the University that, in accordance with the DOE's policies and its previous determinations on the subject, it was prohibited from reviewing the requested records, without parental consent, to determine whether they fell within an exception to the PIA or whether they were properly redacted in accordance with either FERPA or the PIA. The OAG reiterated its position that such determinations must be made by the educational institution itself, and not the OAG.[8]

Accordingly, for the reasons set forth above, the University had the discretion to decline to release the records and chose not to in this case.[9] I would reverse the trial court's rulings on both motions for summary judgment and uphold its decision denying the Statesman's motion for attorney's fees, as under my analysis, the Statesman would no longer be the prevailing party in this litigation.

---

[8] I could agree that the late-filed response was out-of-bounds as evidence in a summary judgment context. But it reinforces the legal argument, supported by the several OAG opinions that the University cites, that the OAG would not have provided a substantive response had the University timely made an OAG opinion request in the first place.

[9] Nor do I foresee that educational institutions will simply resort to a knee-jerk reaction to deny all requests for final-results information. The Statesman noted below that the University of Texas at El Paso had voluntarily disclosed final-results information in response to its request. And in other contexts, schools have differed on how they responded to requests for school records. *See Texas Appleseed v. Spring Branch Indep. Sch. Dist.*, 388 S.W.3d 775, 780 (Tex.App.--Houston [1st Dist.] 2012, no pet.) (noting that some school districts had released information pertaining to "use of force," which fell within the permissive exception of section 552.108 of the PIA, but that this did not require other school districts to follows suit).

## C. The Overly-Broad Nature of the Statesman's Request

Finally, although the majority believes that the Statesman's request was "narrowly drawn" to only include the final-results information that FERPA has expressly determined is subject to release, the record shows otherwise. The Stateman actually sought information beyond the scope of what FERPA allows, and that the trial court in turn, ordered the release of information beyond that scope as well.

FERPA's final-results exception only allows an educational institution to release the name of a student-perpetrator, the violation found to have been committed, and any sanction imposed. It expressly forbids the release of the names of any student-victims or student-witnesses without their consent. *See* 20 U.S.C.A. § 1232g(b)(6)(C) (final results information "(i) shall include only the name of the student, the violation committed, and any sanction imposed by the institution on that student; and (ii) may include the name of any other student, such as a victim or witness, only with the written consent of that other student"). The Statesman, however, not only requested the three permissible items of information, but also requested "any essential findings supporting the institution's conclusion that the violation was committed." *See* 20 U.S.C.A. § 1232g(b)(6)(B). And in its final judgment, the trial court ordered the University to release its "essential findings," categorizing such findings as coming within FERPA's "final-results" exception—when in fact they do not.

What is an "essential finding"? That sounds a lot like the kind of findings (the who, what, where, and why) that would support a violation or the severity of an assessed punishment. The Statesman's request, and the trial court's final judgment, required the release of the University's "essential findings," which is troubling under FERPA in two respects. First, the release of such information will potentially violate the student-perpetrator's privacy rights under FERPA, as it

will require the University to disclose factual information about the student's disciplinary violation beyond what is permitted by the final-results exception, without obtaining parental consent. And second, the release of the University's "essential findings" may violate the privacy rights of any student-victims or student-witnesses involved in the disciplinary proceedings, as it may be possible for others in the school community to identify the students based on those findings—even if their names are redacted—particularly if that disciplinary event received any notoriety on the school's campus. *See Press-Citizen Co., Inc.*, 817 N.W.2d at 485, 492 (agreeing with the university that there may be incidents that have received such "notoriety" that "no amount of redaction of personal information" would prevent a requester from knowing the identity of various persons referenced in the records relating to that incident). As explained above, the DOE regulations consider information that even *indirectly* allows a student's identity to be disclosed to be PII, which is not subject to release under FERPA absent parental consent. 34 C.F.R. § 99.3(f).

If nothing else, I would reverse the trial court's judgment given that it directs the University to disclose its "essential findings" that support its disciplinary decisions, given the potential that such disclosure may lead to a FERPA violation. For these reasons, I dissent.

JEFF ALLEY, Justice

November 29, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.